## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 31 2016, 8:26 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Ernest Davis
Pendleton, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Ernest Davis,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

August 31, 2016

Court of Appeals Case No.
40A02-1509-PC-1345

Appeal from the
Marion Superior Court

The Honorable
Mark D. Stoner, Judge
The Honorable
Jeffrey L. Marchal, Magistrate

Trial Court Cause No.
49G06-0904-PC-40572

**Kirsch, Judge.**

[1] Ernest Davis ("Davis") appeals the denial of his petition for post-conviction relief, contending that the post-conviction court erred in denying his petition. On appeal, he raises the following restated issues for our review:

> I. Whether Davis received ineffective assistance of his trial counsel; and

> II. Whether Davis's freestanding allegation of error concerning the trial court's denial of his motion to dismiss his trial attorney was procedurally defaulted and waived for appellate review.

[2] We affirm.

## Facts and Procedural History

[3] The facts supporting Davis's convictions as set forth by this court in an unpublished decision on his direct appeal are as follows:

> In 2009, Collie Rose ("Rose') lived with her son, Troy Taylor ("Troy"), and her grandson, Jerry Taylor ("Jerry"), on Riley Avenue in Indianapolis, Indiana in the home where she had lived for over forty years. On April 11, 2009, Rose picked up Jerry from work around 11:30 p.m. When Jerry and Rose arrived back home around midnight, Troy was in the living room playing his keyboard. Earlier in the evening, Jerry had spoken to Reginald Groce ("Groce"), who wanted to buy some marijuana from Jerry. Groce knew that Jerry had approximately $500 in cash and that Jerry was interested in using the money in a "marijuana related transaction." *Tr.* at 83. Jerry called Groce when he arrived home from work. Groce asked if Jerry "was off work" and told Jerry he was "out south" and unable to stop by, but would see him the next day. *Id.* at 84-85.

Rose went to bed, and Jerry went to his bedroom to listen to music and watch television. Jerry could see into the living room and could see Troy go to the front door. When Troy answered the door, a man, later identified as Davis, walked into the house, pointed a gun at Troy's head, and asked, "Where is the money at?" *Id*. at 78. Jerry, who was shocked and scared, ran into Rose's bedroom and shut the door. He told her to "hold the door" because "[t]hat man in there got a gun." *Id*. at 54. Jerry told Rose to go out the window, but she was unable to do so. Jerry heard his father say, "Open the door. This man has got a gun to my head." *Id*. at 79. Rose then told Jerry to go out the window while she sat on the floor and held the door with her feet. Jerry went out the window.

Rose could not call 911 because the phone was in the living room. Davis began pushing on Rose's door and yelling, "If you don't open the door, I'm going to shoot you." *Id*. at 56. Rose then thought she heard Troy say, "Jerry, come help me. Help me, Jerry. I need you." *Id*. at 57. She heard the front door open when Davis left. She left her bedroom and called 911. Jerry came back to the house, and he and Rose went into the kitchen where they saw Troy lying on the kitchen floor. Troy's mouth was moving, but he could not say anything. Police and emergency medical personnel arrived and administered CPR on Troy, but he died as a result of a bullet wound to the chest.

Indianapolis Metropolitan Police Detective Jeffrey Wager ("Detective Wager") arrived at approximately 1:54 a.m. and had another detective transport Jerry and Rose to the station to discuss what had occurred. When Jerry and Rose were leaving the house, Jerry saw Groce standing behind the yellow police tape in the front yard. Groce attempted to attract Jerry's attention by calling his name. Jerry initially did not tell the police about the marijuana discussions he had with Groce because he was afraid he would be in trouble. Detective Wager received a call from a female friend of Jerry, who said that Jerry

had told her about his conversations with Groce. Detective Wager interviewed Jerry on April 14, 2009, and at that time, Jerry told the detective about Groce. Detective Wager later interviewed Groce, who implicated Davis in the crime. The police located Davis at his residence and brought him to the police department, where he agreed to speak with the police. When Davis arrived at the police department, he had two small injuries to his back, one of which had a bandage over it. Davis admitted that he was at the house on the night of the crime, but claimed that he shot Troy in self-defense. He denied entering the house with his gun drawn and denied pushing on Rose's bedroom door.

The State charged Davis with murder, felony murder, attempted robbery as a Class A felony, conspiracy to commit robbery as a Class A felony, and unlawful possession of a firearm by a serious violent felon as a Class B felony. The State subsequently amended the charging information by dismissing the conspiracy to commit robbery charge and the unlawful possession of a firearm by a serious violent felon charge. On May 24, 2010, a jury trial was held, at the conclusion of which the jury found Davis guilty as charged. At the sentencing hearing, the trial court entered judgment only as to murder and to attempted robbery as a Class C felony because of double jeopardy concerns. The trial court sentenced Davis to sixty years for murder and eight years for attempted robbery, with the sentences to be served consecutively.

*Davis v. State*, No. 49A05-1102-CR-62, *1-*2 (Ind. Ct. App. Oct. 27, 2011), *trans. denied*.

[4] Prior to trial, Davis pro se moved to dismiss his trial counsel, and the trial court denied the motion. At the conclusion of his sentencing, Davis filed a pro se motion to correct error, alleging that he was denied his right to self-

representation, there were errors in the jury instructions, the State committed prosecutorial misconduct, the State's evidence included incredibly dubious and perjured testimony, and he received ineffective assistance of his trial counsel. *Appellant's App*. at 600-34. The trial court denied the motion, finding among other things, that Davis's trial counsel was not ineffective and that Davis's conviction was not the result of ineffective assistance of his trial counsel. *Id*. at 636-37.

[5] Davis filed a belated appeal, alleging insufficient evidence to support his conviction, abuse of discretion in not instructing the jury that marijuana possession or delivery was not a crime that, if committed, would negate a claim of self-defense, and inappropriate sentence. This court affirmed Davis's convictions and sentence in an unpublished opinion. *Davis v. State*, No. 49A05-1102-CR-62 (Ind. Ct. App. Oct. 27, 2011), *trans. denied*. Davis filed a pro se petition for post-conviction relief, contending that the trial court erred in denying his motion to dismiss trial counsel, the trial court committed fundamental error in refusing to give a jury instruction on self-defense, the trial court committed fundamental error in giving a particular jury instruction, he was denied due process as a result of discovery violations, the State committed prosecutorial misconduct, and he received ineffective assistance of trial counsel. *Id*. at 711-50. Evidentiary hearings were held on Davis's petition. On August 12, 2015, the trial court issued its findings of fact and conclusions thereon, denying Davis's petition for post-conviction relief. Davis now appeals.

# Discussion and Decision

Post-conviction proceedings do not afford the petitioner an opportunity for a super appeal, but rather, provide the opportunity to raise issues that were unknown or unavailable at the time of the original trial or the direct appeal. *Ben-Yisrayl v. State*, 738 N.E.2d 253, 258 (Ind. 2000), *cert. denied,* 534 U.S. 1164 (2002); *Wieland v. State*, 848 N.E.2d 679, 681 (Ind. Ct. App. 2006), *trans. denied*, *cert. denied,* 549 U.S. 1038 (2006). The proceedings do not substitute for a direct appeal and provide only a narrow remedy for subsequent collateral challenges to convictions. *Ben-Yisrayl*, 738 N.E.2d at 258. The petitioner for post-conviction relief bears the burden of proving the grounds by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5).

When a petitioner appeals a denial of post-conviction relief, he appeals a negative judgment. *Fisher v. State*, 878 N.E.2d 457, 463 (Ind. Ct. App. 2007), *trans. denied*. The petitioner must establish that the evidence as a whole unmistakably and unerringly leads to a conclusion contrary to that of the post-conviction court. *Id*. We will disturb a post-conviction court's decision as being contrary to law only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion. *Wright v. State*, 881 N.E.2d 1018, 1022 (Ind. Ct. App. 2008), *trans. denied*. The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Lindsey v. State*, 888 N.E.2d 319, 322 (Ind. Ct. App. 2008), *trans. denied*. We accept the post-conviction court's findings of fact

unless they are clearly erroneous, and no deference is given to its conclusions of law. *Fisher*, 878 N.E.2d at 463.

## I. Ineffective Assistance of Trial Counsel

Davis argues that the post-conviction court erred when it ruled that his claim of ineffective assistance of trial counsel was barred by the doctrine of res judicata. He contends that it was error because he was not given any meaningful opportunity to litigate his ineffectiveness claims. We disagree.

Here, Davis filed a motion to correct error following his trial and sentencing, which was denied by the trial court. In his motion, Davis asserted that he received ineffective assistance of his trial counsel. In its denial of his motion to correct error, the trial court found that Davis was convicted at trial "because the evidence was against him and not because of any ineffectiveness on his attorney's part." *Appellant's App*. at 637. Although Davis filed an appeal, he did not appeal the trial court's denial of his motion to correct error  or his claim of ineffective assistance of counsel.

A defendant may raise a claim of ineffective assistance of trial counsel for the first time in a post-conviction proceeding; however, once the defendant chooses to raise his claim of ineffective assistance of trial counsel, either on direct appeal or in a petition for post-conviction relief, he must raise all issues relating to that claim, whether record-based or otherwise. *Dawson v. State*, 810 N.E.2d 1165, 1172 (Ind. Ct. App. 2004) (citing *Ben–Yisrayl*, 738 N.E.2d at 259), *trans. denied*. A defendant who chooses to raise a claim of ineffective assistance of trial

counsel on direct appeal is foreclosed from relitigating that claim, and the earlier ruling that trial counsel was not ineffective is res judicata. *Id.* Therefore, "just as ineffective assistance of trial counsel claims are foreclosed in post-conviction proceedings if they are raised on direct appeal, such claims are foreclosed where, as here, the issue was raised in a motion to correct error but not raised on direct appeal." *Godby v. State*, 809 N.E.2d 480, 483 (Ind. Ct. App. 2004), *trans. denied*.

[11] Thus, in the present case, Davis's claim of ineffective assistance of trial counsel was previously raised and adjudicated by the trial court. Davis did not directly appeal the trial court's ruling on his claim of ineffectiveness of his trial counsel. Therefore, Davis is barred from re-litigating this claim in his post-conviction petition. *Id*. The post-conviction court did not err in ruling that Davis was not entitled to relief on his claim of ineffective assistance of trial counsel.

## II. Free-Standing Claim of Error

[12] Post-conviction proceedings are civil proceedings that provide defendants the opportunity to raise issues not known or available at the time of the original trial or direct appeal. *Stephenson v. State*, 864 N.E.2d 1022, 1028 (Ind. 2007) (citing *Conner v. State,* 711 N.E.2d 1238, 1244 (Ind. 1999), *cert. denied*, 531 U.S. 829 (2000)), *cert. denied*, 552 U.S. 1314 (2008). Thus, if an issue was known and available but not raised on direct appeal, the issue is procedurally foreclosed. *Id*. (citing *Timberlake v. State,* 753 N.E.2d 591, 597 (Ind. 2001)). "In post-conviction proceedings, complaints that something went awry at trial are

generally cognizable only when they show deprivation of the right to effective counsel or issues demonstrably unavailable at the time of trial or direct appeal." *Id*.

[13] Here, Davis argues that he was denied his right to represent himself at trial, specifically, that the trial court erred when it denied his motion to dismiss his trial counsel. Initially, we note that, although Davis did file a motion to dismiss his trial counsel with the trial court, nowhere in the motion did he request that he be able to represent himself. Therefore, the trial court did not deny Davis's request to represent himself, only his motion to dismiss his trial counsel.

[14] In its order denying Davis's petition for post-conviction relief, the post-conviction court ruled that he was not entitled to relief because his due process claim relating to the trial court's denial of his motion to dismiss trial counsel was a free-standing claim of error. We agree. This free-standing issue raised by Davis was known and available at the time of his direct appeal. Therefore, the issue had to be raised on direct appeal, and because it was not, it is procedurally foreclosed and may not be raised now for the first time on post-conviction relief. *See Stephenson*, 864 N.E.2d at 1028. The post-conviction court properly ruled that Davis was not entitled to relief on his contention of error regarding the denial of his motion to dismiss trial counsel because it was a free-standing claim of error.

[15] Affirmed.

[16] Riley, J., and Pyle, J., concur.